IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| ERIC MCCAIN, | |
|---|---|
| Petitioner, | 8:18CV190 |
| vs. | |
| SCOTT R. FRAKES, N.D.C.S Director, | MEMORANDUM AND ORDER |
| Respondent. | |

This matter is before the court on Petitioner Eric McCain's ("McCain") Petition for Writ of Habeas Corpus. (Filing No. 1.) For the reasons that follow, McCain's habeas petition is denied and the case is dismissed with prejudice.

## I. CLAIM

Summarized and condensed, and as set forth in the court's initial review order (filing no. 5), McCain asserted the following claim that was potentially cognizable in this court: McCain's sentence violates the Eighth Amendment's ban on cruel and unusual punishment because he was a minor at the time of his offense and he received a de facto life sentence without a finding of irreparable corruption. (Filing No. 5 at CM/ECF p. 1.)

## II. BACKGROUND

**A. Conviction and Sentence**

The facts underlying McCain's offense are summarized as follows. At 2:30 a.m. on July 2, 1990, McCain left the Gothenburg Police Department after Officers Haas and Raffety cited him for criminal mischief and theft of property. (Filing No.

12 at CM/ECF pp. 19, 153-57;[1] Filing No. 14-18 at CM/ECF p. 60.) McCain told his friends that he was going to kill a police officer and retrieved a rifle from his residence. (Filing No. 12 at CM/ECF pp. 20-21; Filing No. 14-18 at CM/ECF pp. 60-61.) McCain returned to the Gothenburg Police Department at approximately 3:10 a.m. and asked dispatch, "Is there a cop still here?" (Filing No. 14-18 at CM/ECF pp. 58-61.) The dispatch announced over the intercom that McCain was there. (Filing No. 14-18 at CM/ECF p. 61.) Officer Haas responded, and McCain shot him in the abdomen. (Filing No. 14-18 at CM/ECF pp. 59-61.) Officer Haas died a short time later from his injuries. (Filing No. 14-18 at CM/ECF p. 60.) McCain fled the scene and was later arrested in a cornfield northeast of Gothenburg. (Filing No. 14-18 at CM/ECF p. 61.) At the time of the offense, McCain was seventeen years old (born on May 11, 1973). (Filing No. 14-18 at CM/ECF p. 71.)

On July 12, 1990, McCain was charged by information in the Dawson County District Court with first degree (premeditated) murder and use of a firearm to commit a felony. (Filing No. 14-17 at CM/ECF pp. 1-3.) On October 16, 1990, McCain pleaded guilty to first degree (premeditated) murder and the use of a firearm count was dismissed. (Filing No. 14-18 at CM/ECF pp. 28-40.) On November 9, 1990, McCain was sentenced to life imprisonment. (Filing No. 14-18 at CM/ECF p. 50.)

McCain did not file a direct appeal.

**B. Postconviction Action**

In 2012, the United States Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller v. Alabama*, 567 U.S. 460, 479 (2012). The Court expressly declined to consider the "alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles." *Id.* The Court

---
[1] The court granted the Respondent's Motion to Seal Records pursuant to NECivR 7.5(a)(i) because the exhibits include sensitive and/or privileged information. (Filing No. 11; Filing No. 13.)

nevertheless opined that it expected such sentences would be "uncommon," particularly because of "the great difficulty . . . of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Id.* at 479-80 (quoting *Roper v. Simmons*, 543 U.S. 551, 573 (2005), and *Graham v. Florida*, 560 U.S. 48, 68 (2010)).[2]

After the Nebraska Supreme Court determined that *Miller* applied retroactively, *see State v. Mantich*, 287 Neb. 320, 842 N.W.2d 716, 731 (2014), the state district court granted McCain's request for postconviction relief and ordered resentencing. (Filing No. 14-17 at CM/ECF pp. 21-28.)

Before McCain's resentencing, the United States Supreme Court decided *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), and *Tatum v. Arizona*, 580 U.S. ___, 137 S. Ct. 11 (2016). In *Montgomery*, the Supreme Court held that its decision in *Miller* announced a new, substantive constitutional rule that was retroactive on state collateral review. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 737. *Montgomery* quoted *Miller*, that "life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734 (quoting *Miller*, 567 U.S. at 479-80) (internal

---

[2] In response to *Miller*, the Nebraska State Legislature amended Nebraska's sentencing laws for juveniles convicted of first-degree murder. *State v. Garza*, 295 Neb. 434, 888 N.W.2d 526 (2016); *see also* Neb. Rev. Stat. § 28-105.02. Rather than imposing a mandatory sentence of life imprisonment, the sentencing scheme now provides that juveniles convicted of first-degree murder are to be sentenced to a "maximum sentence of not greater than life imprisonment and a minimum sentence of not less than forty years' imprisonment." Neb. Rev. Stat. § 28-105.02(1). In determining the sentence, the sentencing judge must "consider mitigating factors which led to the commission of the offense." Neb. Rev. Stat. § 28-105.02(2). Section 28-105.02(2) sets forth a non-exhaustive list of mitigating factors for the court to consider, including the offender's age, impetuosity, family and community environment, ability to appreciate risks and consequences of the conduct, intellect, and mental health.

quotation marks omitted). More recently, in *Tatum*, the Supreme Court repeated this quote from *Montgomery* when it remanded several first-degree murder cases for reconsideration. The cases involved juveniles who were sentenced to life imprisonment without parole, were resentenced after *Miller*, and, upon resentencing, were again given life imprisonment without parole. The Court in *Tatum* vacated all the life sentences and directed that upon remand, the sentencing courts should "address[ ] the question *Miller* and *Montgomery* require a sentencer to ask: whether the [juvenile] was among the very rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility" as opposed to those whose "crime reflects unfortunate yet transient immaturity." *Tatum*, 580 U.S. ___, 137 S. Ct. at 12 (quoting *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734) (internal quotation marks omitted).

## C. Resentencing

The state district court held a comprehensive mitigation hearing before resentencing. (Filing No. 14-19; Filing No. 14-20.) McCain offered into evidence multiple exhibits, including: his original presentence investigation report; his initial classification report and annual classification reviews from the Nebraska Department of Correctional Services ('NDCS"); misconduct reports, mental health records, personalized plan, academic transcripts and certificates from the NDCS; a letter from the original sentencing judge; additional letters supporting McCain's capacity for change; job reports from his employer, Cornhusker State Industries; a report from Dr. Kirk Newring, a licensed psychologist who evaluated McCain in preparation for resentencing; appellate briefs in *Roper* and *Miller*; and life expectancy information, including life expectancy for white males in the United States and life expectancy for juveniles sentenced to life without parole. (Filing No. 14-19 at CM/ECF pp. 2-3; Filing No. 14-20 at CM/ECF pp. 73-84.) McCain also offered live testimony from Carl Purcell, a shop supervisor at Cornhusker State Industries; Terry Thacker, a prison ministry worker; Dennis McCain, his father; and Dr. Newring. (Filing No. 14-19 at CM/ECF pp. 7-190; Filing No. 14-20 at CM/ECF pp. 3-73.) At the conclusion of the hearing, the state district court set the matter for resentencing. (Filing No. 14-20 at CM/ECF p. 86.)

A resentencing hearing was held on November 3, 2016. ([Filing No. 14-20 at CM/ECF pp. 90-144](#).) Upon considering the presentence investigation report and supplements thereto, the briefs submitted by counsel, McCain's mitigation evidence, arguments from counsel, McCain's allocution, and the resentencing factors set forth in [Neb. Rev. Stat. § 28-105.02](#), the judge credited McCain's efforts at rehabilitation, his lack of a violent criminal record, and the science indicating that McCain's brain development was not fully formed at the time he committed the offense, but balanced those factors against the nature of his offense—especially McCain's premeditation and expressed desire to kill a police officer months before he shot Officer Haas—and his "excellent" family environment. ([Filing No. 14-20 at CM/ECF pp. 131-41](#).) The judge declined to resentence McCain to life imprisonment and instead sentenced him to not less than 80 years' imprisonment nor more than 99 years' imprisonment, with credit for 9,621 days already served. ([Filing No. 14-17 at CM/ECF pp. 33-34](#); [Filing No. 14-20 at CM/ECF pp. 141-42](#).) Unless McCain loses good-time credit, he will be eligible for parole after forty years, when he is fifty-seven years old. ([Filing No. 14-17 at CM/ECF p. 34](#); [Filing No. 14-20 at CM/ECF p. 142](#).)

### D. Resentencing Direct Appeal

McCain appealed his sentence to the Nebraska Supreme Court, arguing that his sentence amounted to a "de facto" life sentence without parole in violation of *Miller*, *Montgomery*, *Tatum*, and the Eighth and Fourteenth Amendments. ([Filing No. 14-11 at CM/ECF p. 6](#).) McCain pointed out that he will not be eligible for parole until he is fifty-seven years old. ([Filing No. 11 at CM/ECF p. 28](#).) McCain also argued that, in sentencing him, the judge failed to make a specific finding that he was "irreparably corrupt." ([Filing No. 14-11 at CM/ECF pp. 28-29](#).) McCain did not argue that his sentence was excessive. ([Filing No. 14-11 at CM/ECF p. 28](#).)

The State filed a motion for summary affirmance, arguing that "the reasoning underpinning" the Nebraska Supreme Court's prior decisions in *[State v. Mantich, 295 Neb. 407, 888 N.W.2d 376 (2016)](#)* (*Mantich II*), *cert. denied*, 138 S. Ct. 128 (2017); *Garza*, 295 Neb. 434, 888 N.W.2d 526; *State v. Smith*, 295 Neb. 957, 892

N.W.2d 52 (2017), *cert. denied*, 138 S. Ct. 315 (2017); and *State v. Nollen*, 296 Neb. 94, 892 N.W.2d 81 (2017), *cert. denied*, 138 S. Ct. 165 (2017),[3] was dispositive of the issue presented in McCain's appeal. (Filing No. 14-12.) The Nebraska Supreme Court has concluded that a juvenile offender's characterization of his sentence as a de facto life sentence is "immaterial" because *Miller* allowed a juvenile offender to be sentenced to life without parole provided that a sentencing court considers specific, individualized factors before imposing such a sentence. *See Nollen*, 296 Neb. at 122, 892 N.W.2d at 98; *Garza*, 295 Neb. at 448-49, 888 N.W.2d at 534-35; *Mantich II*, 295 Neb. at 415-26, 888 N.W.2d at 381, 383. In *Garza*, the Nebraska Supreme Court also found "no merit to [Garza's] argument that" *Miller* and its progeny required "the sentencing court . . . to make a specific finding of 'irreparable corruption.'" *Garza*, 295 Neb. at 449-50, 888 N.W.2d at 536. The court explained any such rule from *Miller* did not apply because, unlike the juvenile offenders in those cases who were "sentenced, or resentenced to life imprisonment without parole," Garza "was resentenced to a term of years and is eligible for parole" under Nebraska law. *Garza*, 295 Neb. at 449, 888 N.W.2d at 535-36; *see also Nollen*, 296 Neb. at 120, 892 N.W.2d at 98. In the court's view, "[t]he requirements of *Miller* were met when Garza was resentenced." *Garza*, 295 Neb. at 449, 888 N.W.2d at 536.

On August 2, 2017, the Nebraska Supreme Court sustained the State's motion and summarily affirmed the judgment of the state district court. (Filing No. 14-3.) McCain petitioned the United States Supreme Court for a writ of certiorari[4] (filing no. 14-13), which was denied on January 8, 2018 (filing no. 14-14).

---

[3] McCain acknowledged these cases in his appellate brief. (Filing No. 14-11 at CM/ECF pp. 24-31.)

[4] The questions presented were:

1. Whether the Eighth Amendment to the United States Constitution and *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct 2455 (2012), *Montgomery v. Louisiana*, 577 U.S. __, 136 S. Ct. 718 (2016), and *Tatum v. Arizona*, 580 U. S. __, 137 S. Ct. 11 (2016), permit a juvenile

6

**E. Habeas Petition**

McCain timely filed his Petition in this court on April 27, 2018, contending that his sentence violates the Eighth Amendment's ban on cruel and unusual punishment because he was a minor at the time of his offense and he received a de facto life sentence without a finding of irreparable corruption. (Filing No. 1.) In response to the Petition, Respondent filed an Answer (filing no. 15), a Brief (filing no. 16), and the relevant state court records (filing no. 14). Respondent argues that McCain's Petition should be denied and dismissed for the same reasons stated in *Garza v. Frakes*, No. 8:17CV474, 2018 WL 1710183 (D. Neb. Apr. 9, 2018). McCain filed a brief in response (filing no. 20) to Respondent's Answer. Respondent filed a reply brief (filing no. 21). This matter is fully submitted for disposition.

## III. STANDARD OF REVIEW

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As

---

convicted of a homicide offense to be sentenced to the functional equivalent of life without parole.

2. Whether a *de facto* sentence of life without parole for a juvenile denies the offender a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation demanded by the Eighth Amendment to the United States Constitution and *de facto* sentence of life in violation of *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct 2455 (2012), *Montgomery v. Louisiana*, 577 U.S. __, 136 S. Ct. 718 (2016), and *Tatum v. Arizona*, 580 U. S. __, 137 S. Ct. 11 (2016).

(Filing No. 14-13.)

explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405-06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* Indeed, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA [Antiterrorism and Effective Death Penalty Act] standard to [the

8

petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* The Supreme Court agrees, stating:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

9

*Richter*, 562 U.S. at 98 (citations omitted).

More recently, the United Supreme Court, in *Wilson v. Sellers*, ___ U.S. ___, 138 S. Ct. 1188 (2018), indicated that if there is no reasoned state court opinion to "look through," *Richter*'s "could have supported" standard controls. *See Wilson*, ___ U.S. at ___, 138 S. Ct. at 1195. Under that framework, a habeas court must determine "what arguments or theories supported, or could have supported, the state-court decision, and then ask whether it is possible fairminded jurists could disagree." *See Richter*, 562 U.S. at 102.

## IV. DISCUSSION

As the sole ground for his Petition, McCain contends that his sentence violates the Eighth Amendment's ban on cruel and unusual punishment because he was a minor at the time of his offense and he received a de facto life sentence without a finding of irreparable corruption. (Filing No. 1.) McCain's entire Petition is predicated on his assertion that his sentence to a term of years amounts to a life sentence. (Filing No. 1; Filing No. 20.) McCain bases that assertion on a handful of state court decisions. *See, e.g.*, *People v. Caballero*, 55 Cal. 4th 262, 145 Cal. Rptr. 3d 286, 282 P.3d 291 (2012); *Casiano v. Comm'r of Corr.*, 317 Conn. 52, 115 A.3d 1031 (2015); *Henry v. State*, 175 So. 3d 675 (Fla. 2015); *People v. Reyes*, 2016 IL 119271, 63 N.E.3d 884 (2016); *Brown v. State*, 10 N.E.3d 1 (Ind. 2014); *State v. Null*, 836 N.W.2d 41 (Iowa 2013); *State v. Ragland*, 836 N.W.2d 107 (Iowa 2013); *State v. Zuber*, 227 N.J. 422, 152 A.3d 197 (2017); *Bear Cloud v. State*, 2014 WY 113, 334 P.3d 132 (2014).

McCain, however, is unable to cite to any Supreme Court authority clearly holding that a discretionary sentence like his—a term of years for murder with the possibility of parole within his lifetime—is equivalent to a life sentence without the possibility of parole and is cruel and unusual punishment in violation of the Eighth Amendment. *See, e.g., Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (noting the Supreme Court "has not established a clear or consistent path for courts to follow"

10

"in determining whether a particular sentence for a term of years can violate the Eighth Amendment"). To the contrary, in *Lockyer*, the Supreme Court rejected a criminal defendant's claim that the state court's conclusion that a sentence of two consecutive terms of twenty-five years to life did not violate the Eighth Amendment was contrary to or an unreasonable application of clearly established federal law. *Id.* at 73-75. In upholding the sentence, the *Lockyer* Court determined the defendant's sentence was materially distinguishable from a Supreme Court case involving a life sentence without the possibility of parole because the defendant was eligible for parole, *id.* at 74, even though he would not be eligible until he was eighty-seven years old, *id.* at 79 (Souter, J., dissenting).

The same is true here. Not only is McCain parole eligible in his lifetime, he did not even receive a life sentence. McCain points to *Miller*, *Montgomery*, and *Tatum* as support for his Eighth Amendment claim, but none of those cases said anything about "de facto life sentences" or otherwise addressed the narrow issue on which McCain's Petition depends. *See Miller*, 567 U.S. at 479 (prohibiting sentencing schemes that mandate "life in prison without possibility of parole for juvenile offenders"); *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732 (holding "*Miller*'s prohibition on mandatory life without parole for juvenile offenders" applied retroactively to cases on collateral review); *Tatum*, 580 U.S. ___, 137 S. Ct. at 12 (vacating the life sentences of juveniles who were resentenced after *Miller*, and, upon resentencing, were again given life imprisonment without parole, and directing that upon remand, the sentencing courts should address the question *Miller* and *Montgomery* require a sentencing court to ask: whether the juvenile "was among the very rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility" as opposed to those whose "crime reflects unfortunate yet transient immaturity"); *see also In re Harrell*, No. 16-1048, 2016 WL 4708184, at *2 (6th Cir. Sept. 8, 2016) (concluding "the rule on which [the defendant] relie[d]—that the functional equivalent of life without parole is unconstitutional—is not the rule established in *Miller* and made retroactive in *Montgomery*" because those cases "apply, by their own terms, only to mandatory sentences of life without parole").

11

"[T]he Supreme Court has not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life." *Starks v. Easterling*, 659 F. App'x 277, 280 (6th Cir. 2016) (unpublished), *cert. denied*, ___U.S. ___, 137 S. Ct. 819 (2017). *Miller*, *Montgomery*, and *Tatum* were expressly premised on the severity of sentencing a juvenile to life in prison without the possibility of parole. *See Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732-35 (describing life without parole as "the harshest possible penalty for juveniles" (quoting *Miller*, 567 U.S. at 489); *Tatum*, 580 U.S. ___, 137 S. Ct. at 12 ("In the context of life without parole, we stated that 'appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.'" (quoting *Miller*, 567 U.S. at 479)). In *Miller*, the Supreme Court drew a clear distinction between life in prison without parole and lesser sentences like "life with the possibility of parole" "or a lengthy term of years." *Miller*, 567 U.S. at 465, 489.

On resentencing after *Miller*, McCain was not—as prohibited by *Miller*—sentenced to life in prison without the possibility of parole pursuant to a mandatory sentencing scheme that did not give the sentencing judge discretion to consider mitigating circumstances. McCain was resentenced to a term of years after a comprehensive hearing that included mitigation evidence and will be eligible for parole when he is fifty-seven years old. The Supreme Court simply has not extended the rule of *Miller*, *Montgomery*, and *Tatum* to a sentence like McCain's. *Cf. United States v. Jefferson*, 816 F.3d 1016, 1019 (8th Cir. 2016), *cert. denied*, ___ U.S. ___, 137 S. Ct. 2290 (2017) (joining several other circuits in refusing to extend the holding of *Miller* to discretionary life sentences and declining to consider the defendant's argument that *Miller* applied to his 600-month "de facto life sentence"); *Bell v. Uribe*, 748 F.3d 857, 869 (9th Cir. 2014), *cert. denied*, ___ U.S. ___, 135 S. Ct. 1545 (2015) (finding no *Miller* violation where the juvenile offender was sentenced to life in prison without the possibility of parole because the sentencing judge "consider[ed] both mitigating and aggravating factors under a sentencing scheme that afford[ed] discretion and leniency").

Indeed, in *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 736, the Supreme Court explained a state could "remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole." "Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Id.*; *see also Miller*, 567 U.S. at 479 ("A State is not required to guarantee eventual freedom," but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" (quoting *Graham*, 560 U.S. at 75)). That is precisely what happened when McCain was resentenced.

The court finds that McCain has failed to show that there was no reasonable basis for the Nebraska Supreme Court to deny relief. *See Richter*, 562 U.S. at 98. The court's decision is supported by the constitutional principles announced in *Miller*, *Montgomery*, and *Tatum*, and fairminded jurists could not disagree with the outcome. *See Richter*, 562 U.S. at 103. Specifically, McCain's sentence to a term of years with the possibility of parole in his lifetime does not run afoul of the constitutional principles announced in *Miller* and its progeny. *See Garza*, 2018 WL 1710183, at *3-5. Furthermore, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by th[e] [Supreme] Court." *Richter*, 562 U.S. at 101 (first alteration in original) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

McCain is not entitled to habeas relief.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district

court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The court has applied the appropriate standard and determined that McCain is not entitled to a certificate of appealability.

IT IS THERFORE ORDERED that the habeas corpus petition (filing no. 1) is denied and the case is dismissed with prejudice. No certificate of appealability has been or will be issued. Judgment will be issued by separate document.

Dated this 13th day of May, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge